Good morning. Our first case of the morning is consolidated cases 119, 889 and 119, 912 William Bremer et al. v. City of Rockford. Are you ready to proceed? Are we ready? Good morning, Your Honors. My name is Tom Rood and I represent Firefighter William Bremer and we thank you so much for granting our petition for leave to appeal. These issues concerning placebo benefits are incredibly important to many firefighters that have been disabled in the line of duty. There are several very important issues presented in this case. There are issues presented under Section 10 of the placebo. The Section 10A catastrophic injury has been decided correctly by the trial court, the appellate court, and the council has appealed that decision. I will directly address that after he presents his 10A comments, but I believe that the appellate court and the trial court correctly analyzed the 10A catastrophic injury issue. The two issues I am going to talk about is placebo 10B, whether the appellate court was correct in reversing the trial court's granting of summary judgment. The appellate court found that there was a genuine issue of material fact concerning whether Mr. Bremer's injury arose out of or in response to what he reasonably believed to be an emergency. We also had an independent basis, which is that Mr. Bremer also suffered exposures while assisting in a criminal investigation. We believe that the evidence below was satisfactory. We came before the trial judge on cross motions for summary judgment. It was stipulated record and with affidavits that were not materially controverted, and we believe the trial court had an adequate basis. The second issue I'm going to talk about right now is the issue of attorney's fees and whether a firefighter who is successful in pursuing a Section 10 claim, whether he can pursue attorney's fees under the Wage Action Act that is cited in our briefs. This is a really important issue because the firefighter, he's disabled. He's got a lot going on in his life and he really, to defend and pursue benefits against the employer is really quite a task for him economically. He is very vulnerable. Mr. Bremer in this case, he couldn't afford $1,300 a month, which is a lot of money to keep his health insurance going. This disabled firefighter couldn't keep his health insurance in place at a time when pre-existing conditions were excluded from insurance policies. This was a big deal that he couldn't make these payments, but he couldn't. And the city, on the other hand, they've got the economic power. They have their own legal department and they can really push the issue. The firefighter is in a position where getting his attorney's fees granted is tremendously important. It's an issue that demands careful scrutiny by the court to determine whether a Section 10 benefit is a wage under the Wage Action Act. Unfortunately, the trial court nor the appellate court closely scrutinized this issue and as a result I believe they made the wrong decision. Now Section 10 of PSEBA is very clear and Section 10 states that an employer who employs a full-time firefighter who suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee. I mean, Section 10A has employer, employee throughout it. So this is important language in the statute. Let me just interrupt you for a minute. In Crohe, we construed PSEBA based on the legislative debates. In this case, what did the appellate court base its construction of the statute? I guess what I'm really asking is, is it for this court or the legislature to expand the definition of catastrophic injury? Judge, I don't think, first of all, that Crohe expanded the definition. They looked at the language of the statute and said that this means that an employee who's injured in the line of duty and is disabled under Section 110 of the Pension Act, that that employee is catastrophically injured. That's what Crohe said. Now Crohe was simply interpreting the language of the statute. It wasn't unambiguous because Crohe had to look at the legislative history to make its decision. But Crohe did not consider a Section 110.1 disability, which is a disability that arises from an occupational disease. Let me stop you there, counsel. There are three types of disability pensions that can be awarded, right? Line of duty, occupational disease that you just mentioned, and is it issue, right? And non-line of duty. Yes, Judge. And the first two are both incurred from performance of one duty, so shouldn't they be treated the same? Yes, Judge. And, in fact, if you look at the Pension Act, Section 110 and 110.1 are clearly line of duty. By their very terms, Section 111 is so clearly not line of duty, not arising from an act of duty. By the plain language of the statute. And the amicus brief correctly pointed out that the standards between 110 and 110.1 are the same. Whether something arises out of an act of duty or arises as a result from the service as a firefighter, there are cases where this court and other courts have held that that means the same thing. That means the same thing as arising out of and in the course of employment. So Section 110 and 110.1, the line of duty and occupational disease, are under phase, and it's a matter of law, the line of duty disabilities, as distinguished, Your Honor, from 111. And if this weren't line of duty, by definition, we'd have to be under Section 111. But you don't see Crowley applying? I'm sorry? You don't see Crowley applying? I see Crowley not applying to Section 111. I see Crowley applying equally to Section 110 and 110.1 because catastrophic injury, according to the Crowley decision, was an injury that arises in the line of duty. And since both Section 110 and 110.1 are a line of duty, it's completely consistent with Crowley. The problem in – it's not a problem, it's just a fact of this case – is that the Crowley Court did not look to Section 110.1 because that issue wasn't decided. It couldn't decide anything but the 110 issue. And its decision is not exclusive because its decision is really based on the legislative history that says that the legislatures – legislators intended this to protect emergency workers who are disabled in the – catastrophically injured in the line of duty. And that is both a Section 110 and a Section 110.1 disability. Counsel, would you discuss our case in NOAC versus the city of Country Club Hills and how that applies in your view? Yes, Judge. Back to the attorney's fees issue, the appellate court and trial court did not carefully analyze this issue. They looked at the NOAC case. They looked at the Supreme Court decision in NOAC. NOAC says that a Section 10 health insurance benefit is a post-termination benefit because in NOAC the payment of benefits will only occur once disability is determined. And I agree with NOAC. NOAC was where the emergency safety employee was trying to have the city pay benefits prior to his being determined to be disabled. And NOAC was correct. No, payment is post-termination after you're determined to be disabled. However, Judge, NOAC was not confronted with a situation where they were asked to decide whether the Wage Act applied and whether the perceivable benefits are wages for purpose of the Wage Act. It is a completely different matter to say that a payment occurs after being disabled and saying whether a benefit accrues during employment, whether it's a wage. And if you look at NOAC, it didn't address whether it was a wage. But the appellate court and the trial court, they didn't care. They just saw a post-termination benefit. They grabbed onto that. They used that as the pivotal point in deciding the wage issue. But if you look at Section 10, it only applies to employees that were full-time employees at the time that they were catastrophically injured under Section 10 of PCEBA. This is clearly a right that full-time employees had as a result of their being full-time employees. It is clearly a wage. Now, the appellate court and the trial court looked at a very, very narrow definition for wage. It is payment by piece or hour for services or labor provided. But that is a very narrow part of the definition. And the cases cite the Webster's Dictionary and Black's Law Dictionary. And they both talk about wages in terms of being something more than that. They give examples that wages include things like health insurance benefits. And I propose, Judge, and I think it's clearly within the definition of the dictionary, both Webster's and Black's, that a health insurance benefit as provided, as to be provided to full-time employees under PCEBA is a benefit that full-time employees have. If they are injured pursuing an emergency or under the catastrophically injured under Section 10, Section 10 gives them the right while they're employees to have their health insurance covered if they're later found disabled from that injury. So are you arguing something like that this is a deferred compensation idea? In other words, today you get a wage, and part of your agreement with your employer is that at some point in the future, you will also be able to get this health care benefit when you're on disability. Is that the argument you're making? When you said before, health care benefits when you're an active employee is one thing. Yes, Judge. The question is why is this post-disability period health care a wage? Is it because there's some kind of deferred compensation idea? I believe that there is a vested right of the employee to have his health insurance paid for life if he was full-time, if he was catastrophically injured and determined to be disabled. That is a right he had, and the second that he was injured in a way that disables him for life, when he's found to be disabled, then that should apply. So a vested right is the same thing as a wage? Excuse me? You're saying he had a vested right. Yes, ma'am. And that's the same thing as a wage? Yes. Why do you say that? Because he's a full-time employee, and if he's injured during his full-time employment, then he's entitled, because he's a full-time employee, he's entitled later to these health insurance benefits. And the clear language of the statute talks about employers and employees, and there was a case, it was the, I think, Reese case, and in that case the employee was promised a bonus. It was a year-end bonus, and the employee left before the end of the year. And the court found that, you know what, he was entitled to be paid his year-end bonus even though he wasn't there. And the court decided that that right to be paid a year-end bonus is a wage, and they allowed the wage act to be imposed. The Affietto case, which is a federal Seventh Circuit case applying Illinois law, that is a permissive authority. It's persuasive. It's not binding on this court. But I like the Affetto case because it goes through the detail that the appellate court did not, the trial court did not, and really analyzed whether this is a wage. In Affetto, the benefits that would have been paid would have been after retirement. And the court said, wait a minute, you've got an implied contract with this employer that he's going to pay you this benefit if certain circumstances prevail. But the employer breached that agreement because they picked up the factory and they moved it to Georgia. And the employee could not follow, and the employee lost his benefits. And Affetto said, you know what, it's to be paid later. It's a retirement benefit. It's an annuity. But it's still a wage because that was part of the deal that they had. In this case, Section 10 of PSEVA makes this right to be compensated with insurance a part of the full-time employees deal. The clear terms of the statute gives it only to full-time employees. And it is, in my view, he was disabled. He was full-time. It's part of his package imposed by law, but it's part of the package. And he's entitled to it, and it's a wage. And for that reason, I think that the Wage Act claim for attorney's fees should be reversed. It's clear that under the Wage Act, the definition of wages, and it's part of the Wage Act that this was a benefit that was a wage. And just looking at NOWAC and say it was a post-termination benefit because that's when benefits are paid. But as the Resports said, it doesn't matter when they're paid. It matters when they approve. And here, the right accrued when Mr. Bremmer was a full-time employee and was disabled. The Tempe issue of whether the health court correctly found the reverse of the trial court because it found a genuine issue of fact, the appellate court was wrong. The trial court decided, based upon the evidence that was submitted on cross motions for summary judgment, the trial court based its decision on the pension board's decision that found Mr. Bremmer's cardiomyopathy to result from his service in the fire department. And the court also, the trial court also relied on Mr. Bremmer's affidavit. And Mr. Bremmer's affidavit said, I'm a firefighter, I'm trained, I know that I was exposed to carbon monoxide, which is one of the factors the pension board looked at to see whether this cardiomyopathy was related or exacerbated by his service. He said, I know I have that. And he said, I know that I was exposed to chemicals, fumes, carbon monoxide at fire scenes. And then he says, fire scenes, all the fire scenes that I was at where I was exposed were emergencies. And when you look at a cumulative injury that accrues over a 27-year career and is caused by inhalation of carbon monoxide and other chemical fumes, it's not like a hurt in your shoulder. It doesn't happen right away. It happens over a long career. And where his exposure to chemicals happened at fires. And he gives uncontroverted testimony in his affidavit. The city never controverted that he was exposed. The city never controverted that all his fires were emergencies. And they clearly were. The appellate court said that you cannot categorically prove an emergency. Well, you know what? It was looking at all these cases where the firefighter hurt his shoulder, hurt his back, and said, look, we've got to look at the circumstances and decide in a fact-intensive inquiry. But, you know, in this case, Mr. Brewer was injured at fires. The pension board decided it based upon evidence that was presented to it, and rightfully so. And that decision, that link between his duties and his disability was clear. The pension board's decision in my reply brief sets that out. They found that it was related. They found the medical opinions that said you were exposed to carbon monoxide or chemicals and you can have cardiomyopathy. They found all that, and it's clear in their decision. And that was part of the record that Judge Prochaska reviewed. Judges, I'm out of time right now. Do you have any other questions? Otherwise, I will yield to the city. Thank you. May it please the court, justices, Mr. Brewer, members of the public, good morning. My name is Paul Denham. I am a city attorney for the city of Rockford. To begin with, just going off my notes, I think it's absurd to claim that on its face, based on the legislative history of the SEBA, as well as the Crowley decision, that Section 10A of the SEBA applies to occupational disease disabilities under Section 4110 of the Pension Code. As the Supreme Court just ruled five, six months ago, in the village of Vernon Hills, Vahinan, the court had an opportunity to reexamine Crowley v. City of Bloomington, the 2003 Supreme Court decision, which held, based off of the legislative history of the SEBA, catastrophic injury is synonymous with someone who takes a line of duty disability under Section 4110 of the Pension Code. Now, as a municipal attorney, I have some sort of unspoken obligation, I think, to encourage you to reexamine Crowley, to perhaps change the standard for catastrophic injury. But the way that these facts have developed, it's a pretty straightforward examination. Mr. Brewer took an occupational disease disability pension under Section 410.1 of the Pension Code. His SEBA application should be denied because he can't satisfy the catastrophic injury prong of the SEBA. The exclusion of one thing, the expression of one thing is to the exclusion of another thing. At no point has the legislature ever said the words occupational disease disability. It was actually the Supreme Court's language in Crowley that cited Section 410 of the Pension Code. Now, the way that this litigation has developed at the trial court level, the trial court ultimately ruled that there's no meaningful distinction between line-of-duty disability pensions and occupational disease disability pensions. I think it's very apparent that these two statutes have very different causation standards. The trial court tended to overlook a somewhat similar case coming out of Chicago in the 1st District, Rokosik, which analyzed similar provisions under Section 6 of the Pension Act. I think the SEBA applies to not just Section 4, but Section 6, as well as Sections 3 and 5, depending on where you serve as a police officer. I think the appellate court understood this. There was a very colorful exchange between the majority and the dissent about this particular issue. The majority opinion actually conceded that someone who applies for an occupational disease disability pension may not qualify for a line-of-duty disability pension and vice versa. The majority court also favorably cited to the Rokosik opinion coming out of the 1st District. Now, where does that leave us? Well, in terms of Section 10A, you might actually have a firefighter who would apply for PSEBA and not qualify for a line-of-duty pension. The majority opinion holds that that's a possibility. My colleague and I have gone back and forth about whether Bremer would have qualified. In my opinion, the only entity that actually has the ability to make that determination would be the Rockford Pension Board. It should have made that determination had he applied for a pension 10, 11, 12 years ago. However, I don't know how you can affirm this appellate court and trial court holding about catastrophic injury without expanding Crowley, without essentially rewriting the legislative history, without assuming that the legislators intended to mean occupational disease disability even though they only said line-of-duty disability. If that's the case, again, as a municipal attorney, I'd be more than happy to allow you to reexamine the holding in Crowley. But both line-of-duty and occupational disease are both incurred on performance of one's duties, right? The standards are a little bit different. Line-of-duty involves acts of duty or cumulative acts of duty. The standard for occupational disease, there is a standard for service as a firefighter. At the same time, we've gone back and forth in terms of the first paragraph of the occupational disease disability statute. Clearly, at a minimum, there are some legislative findings that the legislature made when it enacted the Pension Act with respect to occupational disease disabilities. Now, as a result, I tend to think that there's some sort of presumption there. It makes it a little bit easier for someone in Mr. Bremmer's condition who essentially has cardiomyopathy, an unknown heart ailment, to still pension out. At the same time, does that mean that they automatically satisfy the catastrophic injury prong of placebo? I don't think so. I don't think there's anything within the legislative history that's there which anticipates that. I don't know if Senator Donahue overlooked that fact. I understand your argument with respect that it would be up to the legislature to distinguish. But on the practical side of things, give me a practical reason to separate out line-of-duty versus occupational disease that occurred during duty. Well, I think when these statutes were developed in the 1960s, and I think there's a case out of New Jersey that I don't know if I cited in this series of briefs, but I cited it at the appellate court, which talks about how each state has kind of dealt with this issue on occupational diseases. Back when this was enacted, there was a thought that in addition to police officers and firefighters who are able to show acts of duty and line of duty, those are usually pretty straightforward analyses. For individuals that develop heart ailments, that develop respiratory diseases and cancers, we should still take care of them through the pension code. And they enacted this statute, the Occupational Disease Disability Statute. For the purposes of conceivable, it's a separate statute. Had it been a line-of-duty statute, it should have been in the same paragraph. It should have been called a line-of-duty statute. Now, I do understand, at least in Article IV, there also is not line-of-duty, which kind of puts the occupational disease statute in the middle. However, it's up to the legislature to define what's covered by a statute. If they intended for catastrophic injury to apply to occupational disease disabilities, they probably should have said it. Now, that might be a good segue into the Section 10b issue, because there is also a causation element. Even for firefighters who can show that they were injured in the line-of-duty, they also have to satisfy the four categories, which this court just examined in the Vaughn v. Carbondale case less than two months ago. Here, at the trial court level, Brehmer actually said that the causation was two of those elements. One issue which both the appellate court and Brehmer have shied away from is he said that he was injured while investigating a crime. He also said that he was injured through his duties as a firefighter in response to an emergency. Now, at this point, Brehmer's strategy has been just to clearly cite to the Pension Board Award, which has some medical opinions which all don't support any of the causation elements within Section 10b. In addition, Mr. Brehmer has asserted all of these different dangerous firefighter activities, which, at the end of the day, I think almost every firefighter could probably make similar allegations. Essentially, what Mr. Brehmer is trying to do is render both provisions of the CEBA superfluous for anyone who receives an occupational disease disability award. At this point, is an evidentiary hearing required to establish his eligibility for health insurance under 10b? I don't know what evidence he can produce which shows any sort of causation between his activities as a firefighter and responding to an emergency. All we have right now in the parties on cross motions for summary judgment essentially stipulated to the pension record, the pension award from 11, 12 years ago. All we have are excerpts of medical opinions which tend to speculate that there's no link between his disability and his job duties. I don't know who he would produce in an evidentiary hearing or what evidence he would produce in an evidentiary hearing which would show causation. Now, incidentally, the appellate court, the majority opinion tended to... Well, first of all, it called section 10b a fact-specific endeavor. And then it said that this pension award doesn't qualify as admissible evidence because it's dicta. And it never identified why it remanded this matter back to the trial court for an evidentiary hearing. The dissent within its arguments on section 10a noted just what I told you about the parties on cross summary judgment stipulating to a pension award without attaching any of the underlying medical documents which may or may not support causation. From the excerpts that are cited within the pension award, I don't think there could possibly be anything there. Mr. Root referred to exposure to chemicals. The excerpt from the pension award that refers to exposure to chemicals by Dr. Stagel expressly stated that there's no link there. That Mr. Bremer told him that he wasn't exposed to the sorts of chemicals that might be related to cardiomyopathy. Now, moving on to Mr. Bremer's arguments about the Wage Action Act. I think it was raised earlier in the question that the NOVAC decision is pretty on point about the nature of the placebo benefit with respect to it being a post-employment benefit. In fact, I think the language is that it kicks in, that's in quotes, it kicks in after a firefighter has shown that he's permanently disabled and unable to work. I don't know how the Wage Action Act would apply in this instance without again rewriting or revising established Supreme Court precedent. The one case that Mr. Bremer has cited which tends to support his argument is the Seventh Circuit case which has never been accepted by any state case here, the Affetto case. Based on your question earlier, the Affetto case tends to hold that there is a way to attach the Wage Action Act if there's some sort of employment agreement to pay annuities or insurance coverage as a retiree. Placebo is just an entirely different type of statute here. It's a statutory entitlement which has nothing to do with any sort of employment arrangement between the city of Rockford and Mr. Bremer. The last part of his cross-appeal has to do with some sort of unjust enrichment argument related to payments for premiums on health insurance that Mr. Bremer never even made. At some point, he actually stopped paying premiums. At one point, his wife was injured in a car accident, but those payments were actually made by the insurance company. It would be one thing if there was some sort of payment expense by the Bremers which was never paid based on the city of Rockford's actions. I don't know. Hopefully, after this argument, either under Section 10A or 10B, the Supreme Court affirms our cross-appeal and it doesn't have to deal with these arguments at the same time. I don't think there's anything there. I've never seen an unjust enrichment claim quite like it. At this point, that concludes the remarks I prepared, unless there are any other questions. It doesn't appear there are any other questions, Counsel. Thank you. Thank you. Thank you. Judge, as you can tell, we disagree vehemently. I don't think including Section 110.1 as a line of duty disability is absurd at all. In fact, all the key language that the Crowey case looked at was the legislatures kept saying line of duty, line of duty, line of duty. They didn't say 110. They didn't say 110.1. They didn't say anything about catastrophic injury, and that's to protect somebody from a line of duty injury that disables them. If we agree with your argument, does everybody that gets an occupational disease disability and automatically get the CBER benefits? Judge, that goes to a point that the city made, and what the city said is there's different standards under 110 and 110.1. And he's partially right in that, because cancer under Section 110.1, there's a presumption. But I tell you what, Judge, all of the other listed problems you have to prove, just like under 110, you have to prove just like under 110.1, you have to prove that these, the heart conditions, all related, all resulted from a service as a firefighter. And, you know, there's no material difference on those points between 110.1 and 110, because it's the same standard. And the court, the pension board, is supposed to adjudicate the case under Section 4-112. They've got to get their three doctors. They have to have their hearing. They have to make a determination that this, that there's a causal relationship between the injury and the duties or service as a firefighter. And, interestingly, there's cases, as the AMICUS brief cited, there's cases going back a long way saying, you know, those standards are the same. Service of duty, arising out of, and line of duty, they all mean the same thing. And when the legislatures, when the legislators were talking about line of duty, they were doing the context that there are all these cases out there saying that's arising under, that's acts of duty, that's resulting from service of duty, that interpretation by the courts is part of the baggage that goes with the statutes. And the legislatures were taking that into consideration when they just said line of duty. And they said catastrophic injury. They didn't say line of duty resulting in a disability under a particular section. It's wide open. And with regards to the occupation of disabilities, Judge? So it's the fact that it's a serious injury rather than the circumstances under which the disability or injury occurred. Is that right? Or am I incorrect? You're partially correct, Judge. It is a serious injury that disables them, therefore it's a catastrophic injury. The circumstances under which it arises is the, whether it's an emergency or not, or whether it arose in a criminal investigation in pursuance of that. So what I'm talking about now is just for the injuries under Section 110.1 where the pension board has to determine causation, it should be treated exactly the same as the 110. If you've got an injury that resulted from your service as a firefighter, it should be treated just like Brother Crowley says, 110 should be treated, you automatically meet the catastrophic injury. So every firefighter then that has an occupational disease disability would qualify. Yes. Is that right? Yes, Judge. Okay. Yes, Judge. And, you know, counsel, you know, I disagree on a lot of things. He just indicated that the appellate court favorably cited the Rokosik case, and, in fact, in paragraph 42, the appellate court did no such thing. The appellate court said, we know you've been citing it, but it's distinguished. It dealt with applying Section 6-140 and not PSEBA Section 10A. The appellate court distinguished it, did not rely on it, and really didn't say it was bad law for what it did. I think it's okay, but it doesn't have anything to do with our issue. The city also takes this position, I addressed it directly and heavily in my reply brief, that medical causation standards apply to determining that an injury arose under as the result of an emergency. There's no language in Section 10 that says it's got to be medical causation. There's no case that decides it. And counsel goes through a bunch of medical malpractice cases and saying you've got to prove to a reasonable degree of medical certainty, but the cases that I went through thoroughly indicate not only is MITRE good and a possibility sufficient to support a pension board decision or the industrial commission's decision, but that the Illinois Supreme Court has held that, you know, you don't need medical causation testimony in an injury case if the testimony of the plaintiff is uncontroverted, if it's consistent, and it was consistent with the pension board's holding and his affidavits consistent, and more importantly, Judge, the defendant, the city, did not put causation at issue. They did not at any point put forth that Brehmer wasn't exposed to carbon monoxide as the pension board decided that, as the doctor said, would be a causative or exacerbating factor for cardiomyopathy. They never disputed it. They didn't dispute it in the pension board. They never tried to intervene. They didn't do anything in the trial court. The second thing. As it stands now, though, for fact-finding on the causation? As it stands right now, Judge, I think it is, but I don't think that that's right because on cross motions for summary judgment, when Mr. Brehmer says, all my fires were emergencies, on cross motions for summary judgment, where they stipulated not only to the pension record, all Mr. Brehmer's testimony down there, his affidavit wasn't controverted, that it was an emergency, and the pension board drew the line between here's his cardiomyopathy, here's his services, the medical evidence links those together. And that's an important point. The appellate court ignores, completely ignores Brehmer's affidavit on the emergency issue. And that is the evidence that the trial court relied upon clearly and expressly in its decision. The appellate court also said that the, and I don't know where this came from because there wasn't any citation to authority, but the appellate court also said that the language the trial court relied upon was dicta. When the pension board links specific duties as being exposed or in fires, when they link that to his cardiomyopathy, that's dicta. They just have to show what arises. But, you know, how does a pension board do that? You say, okay, here's cardiomyopathy, what can cause it? Oh, oh, we've got exposure to CO. And then they look at Brehmer and they say he was exposed to CO. They draw that link. They can't do their job under section 110.1 unless they show that this specific injury resulted from specific duties that were performed and specific exposures. And so the appellate court is saying, oh, we can't consider that because it's dicta. I don't think that holds water. I think the trial court had a stipulated record, not just the pension board record, but all the testimony that came with it. It was all stipulated facts. If you look how they did their briefs below. And then they didn't dispute causation. And under the cases that talk about whether medical causation and testimony is required, they lose. Because they don't put anything at issue. They didn't participate at all. They didn't do one thing below. They started just complaining about, well, there's no evidence of causation. I don't think we need to go down for causation. I think the trial court did a fine job and should be affirmed on its decision. And the record is adequate for that. Judges, thank you so much for your time. We really appreciate it. Cases number 119889, 119912, William Bremer et al. versus the city of Rockford et al. will be taken under advisement as agenda number five. Mr. Rood, Mr. Denham, we thank you for your arguments this morning. Marshal, the Supreme Court stands in recess until 6.30 p.m. this evening. 6.30 p.m.